JOHN TURPIN *vs.* E. B. HERREN and A. L. HERREN.

1. In old equity causes depending at the adoption of the Constitution, and brought here by appeal, if the facts are not found and set out, but the evidence fully satisfies this Court on which side the conscience and justice of the case lies, it will proceed to hear and determine the same.

2. In such cases if this Court is satisfied that a note in possession of the wife of one, as a mere custodian, was obtained from her through the covin and cajolement of the maker, under pretence of a settlement, it will not decree a re-execution (the note being overdue) but an account of what is due thereon, and render a decree for such amount upon the principle of surcharging and falsifying."

(See *Burbank* v. *Wiley*, ante p. 58.

This was an old equity suit, pending in the Court of Equity of Haywood county, at the adoption of the present Constitution and regularly transferred under the Statute and was regularly set for hearing, and heard at Fall Term 1871, of the Superior Court, His Honor, Judge Cloud presiding, on bill, answers, exhibits and depositions.

The bill alleged in substance that the defendants executed to him in February, 1861, a note of $300, and in the latter part of 1861, another note for $200, which, on his entering the Confederate army, he deposited with his wife *to safely keep, and without authority to dispose of in any way;* that while absent "serving his country," the defendant A. L. Herren (the defendants being partners, and having given their notes as such) by cajolery, covin and fraud, the circumstances attending which are minutely and at large stated in the bill, but considered unnecessary to be here recapitulated, induced his wife to surrender to him the said notes which he destroyed; that on his return after the surrender he demanded a re-execution or payment of said notes, which being refused, he

# IN THE SUPREME COURT.

filed his bill. The prayer was for a re-execution and for general relief.

The allegations touching the execution of the notes were evasively admitted by the answer, as also the obtaining of them from Mrs. Turpin, and a detailed statement was entered into, to show that through several settlements with her in Confederate money, the notes had been absorbed, and denying fraud, &c.

The depositions of the plaintiff and his wife, fully sustaining the allegations of the bill were taken, and sundry others corroborative thereof.

A. Herren's deposition was also taken, being a mere statement of his answer. Other unimportant depositions tending to show that Mrs. Turpin was a shrewd woman, and that A. L. Herren was a shrewd man were also taken.

His Honor made a decree ordering a re-execution of the notes but did not state *his finding of the facts,* on which his decree was predicated. The defendants appealed.

*Bvttle & Sons* and *W. H. Bailey* for the plaintiff, after arguing the cause on the proofs, moved their Honors for an account and a decree accordingly, under the general prayer.

*Ovide Dupré* and *Phillips & Merrimon* for the defendants.

PEARSON, C. J. We are satisfied from the bill, answer and process, that the defendants cannot rightfully refuse to account for the two notes, one for $300 and the other for $200, and the $1050 Confederate notes received of the wife of plaintiff.

The supposed calculation and settlement in 1864, between the defendant and the wife of plaintiff, clearly do not conclude him, and he has a right to insist, that the defendants should in good conscience come to a full and fair settlement, and allow him to sur-charge and falsify, the account stated with his wife, who, although proved to be a lady of much business capacity,

JOHN TURPIN *v.* E. B. AND A. L. HERREN.

is not an accountantant and was not authorized by her husband to close up business transactions; so as when he got back from the war, to prevent him from insisting upon having all the dealings and settlements with his wife, (so far as she was assuming to act as his agent, under an authority of which there is no evidence, except the fact that she is a wife, who may be well trusted by her husband,) looked into and gone over or as the books say, "surcharged and falsified."

His Honor struck the merits of the case but he failed to have his attention called to the fact that a Court of equity will never order a re-execution of a note which is past due. The course of the Court is to direct an account and payment of the balance found—so as to put an end to the whole controversy, and not "breed another law suit."

There will be a reference to state the account, putting the two notes and the Confederate money and payments all into the account, at the scaled value, and striking a balance for which the plaintiff will have judgment and execution. Defendant to pay costs.

PER CURIAM.